**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THOMAS N. WALDORF,

      Plaintiff,

vs.                                  CASE NO. 3:05-cv-1072-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

      This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB).  42 U.S.C. § 405(g).  Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #25, P's Brief).  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #26, D's Brief).  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated September 19 2006 (Doc. #19).  The Commissioner has filed the transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).  Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in its making its determinations.  Accordingly, the matter has been decided on the written record.  The

_____

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.  For the reasons set out herein, the Commissioner's decision is **REVERSED AND REMANDED**.

## I. Procedural History

Plaintiff Thomas N. Waldorf protectively filed an application for DIB on May 29, 2003, alleging an onset of disability as of August 31, 2002 (Tr. 350-52).   Plaintiff's initial application was denied, as was his request for reconsideration.  Plaintiff timely requested a hearing before an administrative law judge (ALJ) and a hearing took place on April 29, 2005 before ALJ Melvin D. Benitz (Tr. 38-66).   Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Paul Dolan.   Plaintiff was represented by non-attorney Sandra L. Graff during the underlying administrative phase of this case (Tr. 19, 38).[2]  The ALJ issued an unfavorable decision on June 16, 2005 (Tr. 9-18).   The Appeals Council denied Plaintiff's request for review (Tr. 5-7), rendering the ALJ's decision the final decision of the Commissioner.

## II. Statement of the Facts

Plaintiff Thomas N. Waldorf was born on January 5, 1950 (Tr. 350).  He was fifty-five years old at the time of the administrative hearing (Tr. at 41).   He has a high school education, plus approximately one year of college (Tr. 41, 345).  After several years in the U.S. Army, Plaintiff was honorably discharged in 1975 (Tr. 350).  Following his military

---

[2]The Court notes ALJ Benitz incorrectly identified Plaintiff's representative as Joseph L. Disparti, an attorney (Tr. 12).  The transcript of the hearing shows Plaintiff was represented by Sandra Graff of the Disparti Law Group (Tr. 40).

service, Plaintiff joined his father operating a convenience store and began to grow the company (Tr. 43). Plaintiff testified that after his father's death in 1980, he "took over the whole operation. . . was the Chairman of the Board and. . . was at the office everyday and visiting stores at least two or three times a week." (Tr. 44). In the twenty-seven years that Plaintiff ran the business, it grew to twenty stores located throughout middle Georgia (Tr. 43-44). In January 2000, Plaintiff sold the chain of convenience food stores for approximately $1.6 million dollars (Tr. 61-62). Plaintiff testified he invested the money into rental property, which is held in a partnership with Plaintiff and his wife as the sole partners, and which his wife now operates (Tr. 53-55, 59-62). Plaintiff further testified that the $15,000 shown as income in his name in 2002 were fees received for two months' consulting work done at $250 per hour (Tr. 62).

During his testimony, Plaintiff explained that sometime between 2001 and 2002 pain in his left sciatic nerve "crept up" on him and gradually increased until the pain became so excruciating he had to quit lifting merchandise or heavy items, he could not be in a vehicle for any length of time, and he had to stop playing golf (Tr. 44-49). During the hearing Plaintiff stated that his current pain was a five to six on a scale of one to ten (Tr. 47). However, Plaintiff also testified he had stopped taking pain medication six months ago because he was "scared of it," after experiencing adverse side effects, specifically hallucinations and forgetting things (Tr. 46, 58). Plaintiff estimated that he could not lift more than ten pounds, but he could sit for fifteen to twenty minutes, and could stand for fifteen to thirty minutes (Tr. 47, 55-56).

At the time of the hearing, Plaintiff testified he spent his days on the computer, checking email, news and the stock market (Tr. 47-48). He also stated he walked his dog

(less than one block), talked to people on the phone, and often checked his accounts  (Tr. 47-48).   Every other month, Plaintiff said he attended a board meeting of the sub-condominium association, for which he was the president (Tr. 59).   Plaintiff stated that at fifty-five years old, "I don't feel like I can go back into the workforce, and. . . if you look at my background, of all people, if I could go back to work, I'd go back to work."  (Tr. at 61).

### III. Standard of Review

Plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[3]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. §§ 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g) (2006).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of

---

[3]Unless otherwise specified, all references to 20 C.F.R. will be to the 2006 edition.

the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## IV. Analysis

Plaintiff asserts the Commissioner erred in determining that Plaintiff could return to past relevant work and erred by relying on flawed or insufficiently developed vocational

expert testimony (P's Brief at 2).[4]  In support of this argument, Plaintiff contends that the limitations included in the residual functional capacity (RFC) assessed by the ALJ preclude Plaintiff's return to either the occupation of consultant or president of a company, which are identified as his past relevant work.  Plaintiff also contends not all limitations were included in the hypothetical question posed to the vocational expert.   Defendant asserts the Commissioner's decision overall is supported by substantial evidence.   However, the Defendant concedes an inconsistency between the hypothetical question and the RFC, but claims the ALJ's inclusion of mental restrictions in Plaintiff's RFC must have been inadvertent (D's Brief at 5-6).  It appears the Defendant would have the Court disregard the limitations in Plaintiff's RFC that relate to any mental impairments, while finding that the balance of the residual functional capacity and the ultimate decision to deny benefits were based on substantial evidence and the ALJ applied the correct law in reaching his conclusion.  However, the inconsistencies within the ALJ's decision preclude such a finding.

**Plaintiff's Residual Functional Capacity and Past Relevant Work**

At the fourth step of the Commissioner's analysis, the ALJ must determine the claimant's RFC, which is the most an individual can do despite his or her limitations. 20 C.F.R. § 404.1545(a).  The ALJ is required to consider all of the claimant's impairments, including those which are not "severe," to determine the claimant's RFC.  20 C.F.R. §

---

[4]Plaintiff's brief also states that " the Commissioner failed to fully and adequately weigh the substantial evidence in this matter."  (P's Brief at 2).  However, this statement is not supported or addressed in the body of Plaintiff's brief.  As error on the first two issues requires remand to the Commissioner, only those issues are addressed herein.

404.1545(a)(2).   Section 404.1567(b) defines "light work" as "lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to ten pounds...requires a good deal of walking or standing, or when [the work] involves sitting most of the time with some pushing and pulling . . ."  An individual with "the ability to do substantially all of these activities" is considered capable of performing a full range of light work. 20 C.F.R. § 404.1567(b).  Upon determining the claimant's RFC, the ALJ is then tasked with finding whether the individual can return to past relevant work, given the limitations of his or her residual functional capacity.  20 C.F.R. 404.1520(e), (f).

In this case, the ALJ determined Plaintiff had the RFC to perform a range of light work (Tr. 17, Finding No. 6).  The ALJ specifically stated he was "satisfied" the Plaintiff was capable of "doing at least light level exertion" (Tr. 16).  The ALJ went on to spell out the parameters for light work and then added several limitations to that RFC for Plaintiff.  The ALJ found Plaintiff required a "sit/stand option" and had "a limited ability to do upper extremity pushing and pulling with his right arm" (Tr. 16).  The ALJ also found Plaintiff cannot work around hazards or be exposed to temperature extremes, was limited to simple/routine/repetitive tasks due to his concentration difficulty, and should not work with the general public or in close coordination with others, although he can work in the presence of others (Tr. 16).

The ALJ specifically found Plaintiff's asserted depression was not a severe impairment (Tr. 14).  The ALJ further stated he agreed with the findings of the state agency reviewing physicians that Plaintiff did not have a severe mental impairment (Tr. 14). Yet, the ALJ clearly limited Plaintiff to simple/routine/repetitive tasks not to be performed working in close coordination with others or the general public.  The environmental

restrictions placed on Plaintiff's ability to work further confuse the issue.  The ALJ's treatment of these non-exertional, non-severe impairments, and the resulting work limitations, is not clear in the decision.  When the Court can not discern the basis for the ALJ's decision, a sentence four remand is often appropriate to allow the ALJ to explain the basis for his decision.  *Falcon v. Heckler*, 732 F.2d 827, 830 (11th Cir. 1984).   Such is the case here.

The ALJ finds Plaintiff's "past relevant work as consultant and president of a company that owned convenience stores did not require the performance of work related activities precluded by his residual functional capacity" (Tr. 17, Finding No. 7).  However, close scrutiny of Plaintiff's RFC reveals it is assessed at a lesser level of work than his past relevant work.

The ALJ relied on Plaintiff's testimony and that of a vocational expert (VE) to determine Plaintiff's past relevant work included the occupations of company president and consultant.  The VE was present throughout the administrative hearing and heard Plaintiff's statements concerning his past work (Tr. 63).  Based on the information heard, the VE identified Plaintiff's past relevant work as that of a consultant listed under DOT 189.167-010 and as a president listed under DOT 189.117-026 (Tr. 63-64).[5]

Plaintiff correctly cites that the occupations of consultant and president are associated with the general educational development (GED) reasoning level of five, mathematical level of five and language level of five.  The DOT indicates that under level

---

[5]The references to "DOT" are short form citations to the United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

8

five reasoning one would need "[a]pply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions.  Interpret an extensive variety of technical instructions in mathematical or diagrammatic form.  Deal with several abstract and concrete variables."  *See* I United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 189.167-010, 189-117.026; II United States Dep't of Labor, *Dictionary of Occupational Titles,* Appx. C (4th ed. 1991) (Consultant, President).  The mathematical and language development requisites are no less daunting; requiring, for example, working with logarithms, mathematical induction and binomial theorem, and reading financial reports and legal documents.  See II United States Dep't of Labor, *Dictionary of Occupational Titles,* Appx. C (4th ed. 1991).

With regard to Plaintiff's actual RFC, the ALJ stated he limited Plaintiff "to simple/routine/repetitive tasks due to his concentration difficulty" (Tr. 16).    In the hypothetical posed by ALJ Benitz, the VE was asked to consider if this individual "can do sedentary and light work activities. . . and has to avoid temperature and humidity extremes [and] prolonged standing and sitting and squatting, but he can sit/stand, avoid heights and moving machinery; he would be moderately limited in the push and pull of his right upper extremity; with [claimant's] age and [claimant's] past relevant work, would he be able to do any of the past relevant work with those limitations or any skills that might be derived from that work?" (Tr. 64).  The VE responded, "I believe within the hypothetical, the individual could go back to work both as a consultant and as president of the company. . . ." (Tr. 64).

Nowhere in the record is the VE questioned as to the effects of limitations to simple/routine/repetitive tasks due to concentration difficulty, or with regard to an inability

to do work with the general public or in close coordination with others.  As the jobs identified by the VE have a reasoning level of five, those occupations are inconsistent with limitations in Plaintiff's RFC.

"The claimant bears the initial burden of proving that [he] is unable to perform [his] previous work."  *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991).  In determining whether the Plaintiff has carried his burden at Step 4, there are four factors to consider: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the Plaintiff's age, education and previous work experience. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "The regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past."  *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) citing 20 C.F.R. § 404.1520(e) (emphasis in original).

In this instance, the past kind of work is identified in the *Dictionary of Occupational Titles*, which constitutes substantial evidence for the listed occupations.  However, there is a marked incongruence between Plaintiff's past relevant work, the objective medical evidence and Plaintiff's RFC.  Here, the ALJ failed to identify the evidence supporting his RFC determination of Plaintiff's ability to perform work-related activities, specifically the limitations related to simple tasks and work with others, and the environmental restrictions. The Court declines to make an arbitrary assumption regarding what the ALJ may have considered in making these findings.  *See, e.g., Cook v. Barnhart*, 347 F.Supp.2d 1125, 1132 (M.D. Ala. 2004) (noting that even where the Commissioner's argument on an issue might not be unreasonable, the courts will not make routine or arbitrary assumptions regarding what an ALJ did and did not consider if the ALJ fails to state what evidence

10

contributed to his findings).

Here, Defendant asserts, "[c]learly, the record supports a finding that Plaintiff had no mental restrictions and the ALJ's inclusion of such restrictions in his RFC finding was in error." (D's Brief at 6). As Defendant concedes the RFC is in error, this Court must remand for a residual functional capacity assessment to be determined from all the evidence of record.

**Vocational Expert Testimony and the Hypothetical Question**

Plaintiff's argument on this issue centers on whether the ALJ erred by posing an incomplete hypothetical to the vocational expert and whether the ALJ further erred in reliance on the vocational expert's testimony concerning the jobs identified as Plaintiff's past relevant work. Here, the Court agrees with Plaintiff. In this case, Plaintiff correctly notes that the hypothetical question posited to the VE was incomplete because it failed to encompass all of Plaintiff's impairments as stated in the RFC. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). As discussed above, the ALJ did not reference any limitations to Plaintiff's ability to work with people or to perform mental tasks, limitations which were included in the RFC, whether erroneously or not.

When vocational expert testimony is relied upon, such testimony should be developed under the expected standards. A vocational expert's testimony does not constitute substantial evidence, unless the ALJ poses a hypothetical question which comprises all of the claimant's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), *citing Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089 (2000). The ALJ's hypothetical question to the VE did not accurately portray Plaintiff's limitations as assessed. Thus, any reliance on the VE's testimony to determine

11

whether Plaintiff could return to past relevant work is not supported by substantial evidence.

### V. Conclusion

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence or decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED**.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Upon remand, the Commissioner shall reevaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The Commissioner may desire to conduct additional proceedings in light of this Opinion.

The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 27th  day of September, 2007.

Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge